Filed 6/12/23 P. v. Pedrisco CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PEDRO MORALES PEDRISCO,<br><br>    Defendant and Appellant. | H050368<br>(Santa Clara County<br>Super. Ct. No. C1354610) |

Defendant Pedro Morales Pedrisco was convicted by jury of participating in a criminal street gang (count 1; Pen. Code, § 186.22, subd. (a); unspecified statutory references are to the Penal Code), assault with a deadly weapon (count 2; § 245, subd. (a)(1)), and three counts of witness intimidation by force or the threat of force (counts 3–5; § 136.1, subd. (c)(1)), with gang special allegations as to counts 2-5 (§ 186.22, subd. (b)(1)(B), (b)(4)). Defendant admitted he had suffered two prior strike convictions (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and two prior serious felony convictions (§ 667, subd. (a)), and that he had served one prior prison term (§ 667.5, subd. (b)). The trial court sentenced defendant to an indeterminate prison term of 40 years to life.

After amendments to the Penal Code went into effect while defendant's first appeal was pending, a different panel of this court upheld the convictions but remanded the case to allow the trial court to strike the one-year prior prison term enhancement and exercise its discretion as to whether to strike the formerly mandatory five-year prior

serious felony conviction enhancements. In this appeal, defendant challenges the trial court's denial of his request to strike the prior serious felony conviction enhancements. He also challenges the trial court's denial of his motion for a new trial in light of additional amendments to the Penal Code. Based on those changes, we will reverse the convictions and remand the matter for further proceedings, including retrial at the prosecution's election.

## I.   BACKGROUND

### A. TRIAL EVIDENCE[1]

#### 1.  The Stabbing Incident

On April 13, 2013, brothers Brian and Mark Ramirez, both college students in San Jose, were drinking with their cousin, Christian Murillo, in their residence. Sometime before midnight, around 11:30 or 11:45 p.m., they left to attend a party. They first went to a liquor store. They left the liquor store and began walking toward an intersection. Two men on the other side of the intersection asked if they were "busters" or "gang banging." As Brian, Mark, and Murillo walked across the intersection, the two men approached and said, "Hey, we're talking to you," and "Busters, slow down, come here." Murillo responded, "We don't gang bang," or, "We're not gangsters." Murillo, Mark, and Brian continued to cross the street and tried to get away. The two men called out, "Hey we're talking to you. He's talking to you, wait[,]" as they began following the Ramirez brothers and Murillo.

The two men approached and asked again, "Are you guys busters," and, "What do you guys bang?" One of the men suddenly pulled out a long knife and stabbed Brian in the arm. At trial, Mark identified defendant as Brian's assailant. Brian "looked down" and saw that he "was gushing blood," so he took off his shirt and covered the wound. He

---

[1] We take our summary of the trial evidence, largely verbatim, from this court's earlier opinion. (*People v. Pedrisco* (Jun. 16, 2021, H045310) [nonpub. opn.].) We have taken judicial notice of the record in that appeal at defendant's request.

ran to the liquor store, went inside, and quickly left because "[s]omething told [him] not to go inside there." The two men followed him. Brian's assailant told him, "Don't call the police," and, "You're lucky to still be breathing[.]"

As Brian was leaving the liquor store, Mark and Murillo went inside. Mark asked the clerk to call an ambulance, but the clerk appeared reluctant to do so. The store clerk testified that he did not make the call because he was scared. Moments later, the assailant's accomplice entered the liquor store. He told them, " 'Don't call the cops,' or … 'Don't call the fucking police or else.' " He then said that if " 'nobody call[s] the cops [then] we'll leave you guys alone.' " Mark and Murillo responded, " 'We'll be gone and we won't call the police. We'll be fine.' " The assailant's accomplice left the store.

Mark and Murillo found Brian hiding underneath a vehicle down the street outside the liquor store. Brian, Mark, and Murillo went back to their residence and dialed 911. Brian was taken by ambulance to the hospital, and he required four or five staples to close the arm wound. It took three or four months for his arm to fully heal.

On April 18, 2013, Brian was shown a "six-pack photo lineup that included defendant Pedrisco." Brian said the photograph of defendant "kind of looks like" the man who stabbed him. "He said he recognized the facial features," but then said, "that's not him." When the interviewing officer "clarified [Brian's] statements, he said that was the person [who] stabbed him." The second time Brian went through the photo lineup, he identified defendant as the man who stabbed him. Brian also identified Jose Ortega as defendant's accomplice.

Mark was also shown a six-pack photo lineup, which included defendant's photograph. Mark initially failed to identify defendant. Viewing the lineup again, Mark identified defendant as the person who stabbed Brian, saying, "it would be this person if the person had gained some weight." Mark added, "if the guy [in the photograph] was between 5-9 and 5-11, it was definitely him." Mark also identified Ortega as defendant's accomplice. (Murillo did not testify.)

3

## 2. Ortega's Testimony

Ortega testified for the prosecution pursuant to a plea agreement. Ortega admitted that the prosecution had reduced the charges against him in exchange for his testimony.

For "maybe … more than ten years," Ortega was a member of Varrio Williams Street (VWST), a Sureño street gang based in San Jose. Defendant was also a member of VWST. In 2013, defendant was the most respected member of VWST, and "could be" described as the leader of the gang. During that time period, Ortega took orders from defendant.

On April 13, 2013, Ortega attended a party for defendant's sister in Sunnyvale. Ortega smoked crystal methamphetamine and drank about 12 beers. Defendant drank a bottle of Hennessy, and according to Ortega, "was drunk." Defendant and Ortega decided to leave the party, and were driven to San Jose and dropped off by defendant's brother-in-law.

After they were dropped off, defendant and Ortega walked to a corner and waited for the light to change. As they were crossing, Ortega saw three other people crossing in the opposite direction. Ortega did not think they looked like Norteño gang members, but rather "students from the university." Defendant "stayed back to talk to them in the middle of the street." Ortega reached the other side of the street, turned, and saw defendant was speaking with the three men. Defendant then "touched the arm" of one of the men, and then Ortega saw that the man was bleeding from his upper arm. The bleeding man ran, and defendant followed him. Ortega was "scared," but his "reaction was to follow." Ortega then saw the other two men run toward a liquor store. Ortega followed them "to go tell them not to call the police." Ortega did so "[b]ecause [he] was under the influence of drugs and [he] didn't want to get involved. [He] intimidated them so they would not call the police." He stated that he did not intimidate them to "protect" defendant.

4

Ortega left the store and encountered defendant walking down the sidewalk. Defendant handed Ortega a bloody knife. Ortega then realized that defendant had stabbed that person in the middle of the street. Ortega took the knife, cleaned it, and kept it. The knife was never recovered.

Ortega also testified about an incident that took place when he was being transported from jail to court to testify. Defendant was put on the same bus as Ortega. Defendant told Ortega that Ortega "wasn't thinking about [his] family," and that defendant "was going to send [Ortega's] photograph to Mexico[,] so that if [Ortega] got deported to Mexico, they would have [his] picture there." Defendant also said to Ortega: " 'You have a brother. You have a sister. You have a dad. You're not thinking about them.' " Ortega understood these comments to be threats.

### 3. Additional Threats

On May 31, 2013, VWST member Alejandro Arellano entered the same liquor store involved in the stabbing. He approached the clerk who had been on duty during the previous month's incident and said, "If you testify, we have problems." Arellano made a stabbing motion with his hand. Arellano testified that he was drunk at the time and did not recall why he tried to dissuade the clerk from testifying. Arellano also testified that Ortega was "an acquaintance" and "a friend," but not a member of VWST. He had also heard of defendant from "friends" and "acquaintances," but was not aware if defendant was a member of VWST at the time.

### 4. Call Detail Records

Jim Cook testified as an expert in the area of "call records, text messages, text content data records, carrier records, mapping of cellular records and cellular technology." He analyzed call detail records for cell phone numbers associated with defendant and Ortega. Cook testified that defendant's call detail records showed "over 182 call events in less than a three-month period" with Ortega's cell phone number. He also determined that the phones associated with defendant and Ortega had been in contact

5

multiple times on April 13, 2013. He explained that defendant's call detail records also showed that both phones were in the vicinity of the crime scene between 11:54 p.m. and 11:57 p.m. on the night of the stabbing, and that two calls were initiated from Ortega's phone to defendant's phone during that brief time period.

### 5. Gang Evidence

District Attorney Criminal Investigator Justin DeOliviera, who was previously a detective in the Gang Investigations Unit for the San Jose Police Department, testified as an "expert in the area of Hispanic street gangs in Santa Clara County."

DeOliviera testified that there are two major gangs in San Jose: Norteños and Sureños. Within those two major gangs, there are numerous "subsets," or small individual gangs affiliated with the larger group. VWST is one of 15 Sureño-affiliated gangs in San Jose. Its territory includes "downtown San Jose, William Street, which runs south of San Jose State and runs between First and William[] Park, which is around 19th Street, 17th Street."

DeOliviera testified that gang members will go " 'hunting' " by going to rival territories to look for targets. Sureños use the term " 'buster hunting,' " with buster being "a derogatory term for a Norteño that a Sureño would use." Gang members go hunting to gain respect and influence, both for themselves and for the gang as a whole. DeOliviera explained that "backing up the gang" is an important part of "putting in work" and gaining respect. This means that "if we have a group of gang members and there's a confrontation" involving one gang member, other gang members are "required to go back him up." This includes "cleaning it up afterwards," meaning "if there's someone who saw it," other gang members will "go deal with that guy and … talk to him."

DeOliviera described predicate offenses committed by VWST and Sureño gang members. DeOliviera expressed the opinion that the charged offenses were committed for the benefit of VWST. He based his opinion on the fact that the crimes occurred in

6

VWST territory, they were committed by two active members of VWST working together, and the victims were called "busters."

## B. PROCEEDINGS ON REMAND

After Senate Bill No. 1393 amended sections 667 and 1385, and Senate Bill No. 136 amended section 667.5, this court remanded the case and instructed the trial court "to strike the prior prison term enhancement and to exercise its discretion as to whether to strike defendant's prior serious felony conviction enhancements." (*People v. Pedrisco* (Jun. 16, 2021, H045310) [nonpub. opn.], p. 20.) The trial court struck the prior prison term enhancement but denied defendant's motion to strike the prior serious felony conviction enhancements, finding that it was "not in the interest of justice to strike the prior convictions." Defendant also moved for a new trial on count 1 and dismissal of the gang enhancements based on Assembly Bill No. 333's amendments to section 186.22, and for a new trial on counts 2-5 based on the newly added section 1109. The trial court found that defendant's motion was not properly before it "because it was not remanded from the Court of Appeal" but nonetheless denied the motion.

## II. DISCUSSION

Defendant contends the trial court erroneously denied his motion for a new trial and his motion to strike the prior serious felony conviction enhancements. He bases this appeal on amendments made to the Penal Code by Assembly Bill No. 333 and Senate Bill No. 81, which took effect after our previous remand.

### A. ASSEMBLY BILL NO. 333 AND THE MOTION FOR A NEW TRIAL

Effective January 1, 2022, Assembly Bill No. 333 amended section 186.22 and added section 1109. (Stats. 2021, ch. 699, §3–5.) Defendant contends that those changes are retroactive, he is entitled to a new trial on count 1 and the gang enhancements under amended section 186.22, and he is entitled to a new trial on counts 2-5 under section 1109. We need not determine whether the trial court erred in finding that defendant's motion for a new trial was not properly before it; "even if the trial court

properly concluded it lacked jurisdiction to entertain the motion," the issue raised in the motion "has now been brought before us." (*People v. Hargis* (2019) 33 Cal.App.5th 199, 208.) "The scope of our prior remand is no longer relevant to our analysis," which turns on whether defendant is legally entitled to the relief he seeks. (*Ibid.*)

### 1. Amendments to Penal Code Section 186.22 (Count 1)

Amended section 186.22 modifies the elemental definitions of " 'pattern of criminal gang activity' " and " 'criminal street gang' " (§ 186.22, subds. (e), (f)), and clarifies what it means to "benefit, promote, further, or assist" a criminal street gang. (§ 186.22, subd. (g).) The statute now prescribes the permissible timing of predicate offenses used to show a pattern of criminal gang activity relative to one another and to the currently charged offense; the predicate offenses must have commonly benefited a criminal street gang; the common benefit must have been more than reputational; the currently charged offense may not be used to establish a pattern of gang activity; and the gang's members must have collectively engaged in the pattern of gang activity. (§ 186.22, subds. (e), (f), (g).) As ameliorative changes, the substantive amendments to section 186.22 apply retroactively to defendant (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*) [legislative action altering or reducing criminal punishment applies to non-final judgments]).

Defendant argues that the predicate offenses relied on in his trial do not meet the new statutory standard because they include Jose Ortega's conviction for participating in the charged offense, they were not shown to have provided a common benefit that was more than reputational, and it was not proven that they were collectively engaged in by members of the gang. The Attorney General argues that remand is unnecessary because the jury would have found beyond a reasonable doubt that at least two predicate offenses satisfied all requirements of amended section 186.22.

The predicate offenses presented at trial included: Manuel Alvarado's 2006 conviction for assault with a deadly weapon; Jorge Arellano's 2007 conviction for

8

robbery; defendant's prior conviction for robbery (in the same case as Jorge Arellano); defendant's 2008 prior conviction for assault with a deadly weapon; Jose Ortega's 2012 conviction for vehicle theft; Alejandro Arellano's 2013 conviction for witness intimidation; and Ortega's conviction for witness intimidation in the instant case. The parties correctly agree that Ortega's conviction in this case can no longer be used as a predicate offense under amended section 186.22, subdivision (e)(2). But they disagree about whether the trial evidence sufficiently established all required elements for at least two other predicate offenses.

Defendant notes that the collective engagement requirement of amended section 186.22, subdivision (f) has been interpreted to mean that predicate offenses must have each been "committed by more than one person," rather than "individually but on a different day." (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1088–1089; accord, *People v. Lopez* (2021) 73 Cal.App.5th 327, 345 (*Lopez*).) But the Attorney General points out that another appellate decision currently under review by the Supreme Court (*People v. Clark* (2022) 81 Cal.App.5th 133, 145–146, rev. granted Oct. 19, 2022, S275746) has concluded otherwise. Since that case was decided, the Supreme Court has clarified in *People v. Tran* (2022) 13 Cal.5th 1169, 1207 (*Tran*) that—whatever "the contours of Assembly Bill [No.] 333's collective engagement requirement" may be—reversal is required where "the jury was not presented with any discernible theory as to how" that requirement was met. Under either interpretation of the requirement, the record here does not reveal the presentation of a compliant theory of collective activity derived from the predicate evidence.

Nor was the jury asked whether any of the predicate offenses provided a common benefit to the gang that was more than reputational, as required under amended section 186.22, subdivision (e)(1). Nonetheless, we acknowledge evidence in the record that could support such a finding with respect to certain predicate offenses. For example, Alejandro Arellano was convicted of witness intimidation with a gang allegation, and

9

amended section 186.22, subdivision (g) lists "intimidation or silencing of a potential current or previous witness or informant" as one common benefit that could satisfy the new requirement. The prosecution's gang expert also testified that Manuel Alvarado's conviction for assault with a deadly weapon stemmed from his stabbing of a rival gang member, and "targeting a perceived or actual gang rival" is similarly listed in section 186.22, subdivision (g). But the expert testimony also suggested that the predicate offenses could produce reputational benefits: for example, the expert opined that a hypothetical crime mirroring the facts of the instant case would benefit the gang by making it appear "powerful and strong" to residents of its territory. Even if we assume the jury could have found that at least two predicate offenses provided benefits beyond reputation, "we cannot rule out the possibility that the jury relied on reputational benefit to the gang as its basis for finding the enhancements true." (*People v. Sek* (2022) 74 Cal.App.5th 657, 669.) On this record we cannot say beyond a reasonable doubt (see *Tran*, *supra*, 13 Cal.5th at p. 1207) that the jury would have found at least two predicate offenses (excluding Ortega's conviction in the instant case) provided a qualifying common benefit.

Because we cannot conclude that the jury would have found at least two predicate offenses met either the collective engagement requirement or the common benefit requirement of amended section 186.22—let alone both requirements—we must remand the matter for possible retrial on count 1 and the gang allegations. (See *Lopez*, *supra*, 73 Cal.App.5th at p. 346; *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71–72.)

### 2. **Penal Code Section 1109 (Counts 2-5)**

Assembly Bill No. 333 also added section 1109, requiring a trial court to conduct a bifurcated trial on gang special allegations if requested by the defendant. (§ 1109, subd. (a).) Guilt of the underlying offense must first be determined, and a trial on any gang allegations is conducted only if the defendant is first found guilty of the underlying offense. (§ 1109, subd. (a)(1), (2).) Substantive gang participation offenses must be tried

10

separately from counts that do not require gang evidence, and may be tried in the same proceeding as gang-related special allegations. (§ 1109, subd. (b).)

Defendant argues that section 1109 is retroactive under *Estrada*, *supra*, 63 Cal.2d at p. 745, while the Attorney General argues it is not. This court is also divided on that question. One panel has found section 1109 retroactive (*People v. Burgos* (2022) 77 Cal.App.5th 550, 564–568, rev. granted Jul. 13, 2022, S274743); another panel has reached the opposite conclusion. (*People v. Ramirez* (2022) 79 Cal.App.5th 48, 64–65, rev. granted Aug. 17, 2022, S275341.) We agree with the reasoning of the *Burgos* majority, which saw no rationale for treating section 1109 as prospective-only but section 186.22 as retroactive absent an express indication that the Legislature intended to make that distinction. (*Burgos*, at pp. 567–568.)

The Attorney General also argues defendant forfeited his section 1109 claim by not requesting bifurcation in the trial court, apparently based on the premise that section 1109 "did not change the requirement that defendants request bifurcation" or "impose a sua sponte duty on trial courts" and is therefore inapplicable to defendants charged with substantive gang participation offenses. But section 1109 did not exist at the time of defendant's trial and defendant therefore had no right to bifurcation. Further section 1109 requires bifurcation of gang special allegations only if "requested by the defense" (§ 1109, subd. (a)), but it separately provides all substantive gang participation offenses "shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime." (§ 1109, subd. (b); see *People v. E.H.* (2022) 75 Cal.App.5th 467, 478 ["Section 1109, subdivision (b) requires trial courts to try the substantive offense of gang participation 'separately from all other counts that do not otherwise require gang evidence as an element of the crime,' whether or not requested by the defense"].) We find application of the forfeiture rule would be inappropriate here. Bifurcation of gang charges was discretionary at the time of defendant's trial (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1048–1051), but we would not expect counsel to

11

have anticipated it would become available to defendants as a matter of right. "[A]lthough challenges to procedures or to the admission of evidence normally are forfeited unless timely raised in the trial court, 'this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change.' " (*People v. Black* (2007) 41 Cal.4th 799, 810, quoting *People v. Turner* (1990) 50 Cal.3d 668, 703.)

The Attorney General alternatively contends that not bifurcating defendant's trial was harmless because gang evidence would have been admissible even at a bifurcated trial and the evidence of defendant's guilt was overwhelming. The proper prejudice standard to be applied in the section 1109 context was addressed in *Tran*, *supra*, 13 Cal.5th at p. 1209. Although it allowed for the possibility that the federal constitutional standard under *Chapman v. California* (1967) 386 U.S. 18 could apply if the prosecution's reliance on particular gang-related evidence renders a trial fundamentally unfair, the *Tran* court concluded that the state standard under *People v. Watson* (1956) 46 Cal.2d 818 applied in the circumstances in that case before it. (*Tran*, *supra*, 13 Cal.5th at p. 1209.) As we will explain, we find the section 1109 error here to be prejudicial under either standard. As a result, we need not determine whether evidence about the predicate offenses and other gang activity deprived defendant of a fair trial in order to trigger the stricter standard. (See, e.g., *People v. Albarran* (2007) 149 Cal.App.4th 214, 230–232 [erroneous admission of extensive prejudicial gang evidence rendered trial fundamentally unfair].)[2]

We agree with the Attorney General that some gang evidence would have been admissible even at a bifurcated trial on the non-gang offenses. Evidence of defendant's

---

[2] This court found in defendant's earlier appeal that the admission of his prior convictions as predicate offenses did not violate due process rights because, under then-existing law, "the evidence was relevant for a valid purpose, and therefore it did not serve only as improper propensity evidence." (*People v. Pedrisco* (Jun. 16, 2021, H045310) [nonpub. opn.], pp. 11–12.)

12

gang membership, and certain evidence of the gang's practices, would likely have been admitted as proof of defendant's motive to commit those crimes. But, crucially, evidence of defendant's two prior felony convictions (including one for assault with a deadly weapon) would have been properly excluded. In ruling on the prosecution's request to use those convictions as predicate offenses to prove the gang charge, the trial court acknowledged that defendant would be prejudiced by their admission but considered its discretion to exclude them "very limited" due to the requirements of section 186.22. No such limitation would have applied at a bifurcated trial of the non-gang charges. Nor would the jury have needed to hear extensive testimony about the criminal activity engaged in by other members of the gang, possibly (according to Ortega's testimony) at defendant's direction.

Once that evidence is set aside, the remaining evidence of defendant's guilt was not overwhelming. Neither of the Ramirez brothers initially identified defendant when presented with a photo lineup, and Brian Ramirez was unable to identify defendant at trial. Mark Ramirez did identify defendant at trial, but stated he was at most 85 percent confident in his identification. While call detail records put defendant's phone near the scene of the assault, the records did not establish a precise location nor that defendant was the person who stabbed Brian. The only witness who professed certainty on that point (Ortega) was himself a participant in the crime who was testifying as part of a plea agreement, potentially affecting his credibility. Not only are we unable to conclude beyond a reasonable doubt that the gang evidence which would have been excluded in a bifurcated trial did not contribute to the verdicts on the underlying non-gang charges, we also find it reasonably likely that defendant would have obtained a more favorable result had that evidence been excluded. We will therefore remand the matter for a new trial on counts 2–5.

13

## B. SENATE BILL NO. 81 AND DISCRETION TO STRIKE ENHANCEMENTS

As an alternative to a new trial, defendant asks us to vacate the prior serious felony conviction enhancements or remand the matter for reconsideration by the trial court. He contends that the trial court did not properly exercise its discretion under section 1385 (as amended by Senate Bill No. 81), which requires that "great weight" be given to certain mitigating circumstances in determining whether to strike sentencing enhancements. (§ 1385, subd. (c)(2); Stats. 2021, ch. 721, § 1.) In light of our conclusion that defendant is entitled to a new trial, we do not reach this alternative request.

## III. DISPOSITION

The judgment is reversed, and the gang enhancements are vacated. The matter is remanded to the trial court for further proceedings, including retrial at the prosecution's election.

_____
Grover, J.

**WE CONCUR:**

_____
Greenwood, P. J.

_____
Bromberg, J.

H050368
*People v Pedrisco*